**Gerald M. ELAM, Appellant,**

v.

**Sheriff Robert DAWSON, Respondent.**

**No. WD 67059.**

Missouri Court of Appeals,
Western District.

March 13, 2007.

Gerald R. Elam, Cameron, MO, Appellant pro se.

R. Timothy Bickhaus, Prosecuting Attorney, Macon, MO, for Respondent.

Before HOWARD, C.J., and ULRICH and SPINDEN, JJ.

VICTOR C. HOWARD, Chief Judge.

In recent years, Gerald Elam (Elam) has had significant contact with the Missouri Court of Appeals.[1] He currently appeals a lower court's dismissal of a replevin action which he brought against Sheriff Robert Dawson (Sheriff). Purportedly acting as his attorney-in-fact, Elam's par-

ents signed a compromise settlement agreement and filed a voluntary dismissal of the replevin action. Proceeding pro se, Elam now appeals a final judgment of the circuit court dismissing the action and denying his motion for relief from the judgment pursuant to Rule 74.06(b).[2]

## Background

After obtaining a search warrant for the investigation of the murder of Elam's grandfather, Sheriff raided Elam's workshop and residence on or about June 5, 1997. While executing the warrant, he seized several items owned by Elam, including knives, firearms, bayonets, hatchets, ammunition, a bicycle, and jewelry. Elam was later convicted of the homicide of his grandfather and sentenced to a life term in prison.

On September 29, 2003, after the trial court had ruled that many of the items seized were irrelevant to the criminal prosecution, Elam brought a replevin action to regain the property seized. *Elam v. Dawson*, 156 S.W.3d 807, 808 (Mo.App. W.D. 2005). Sheriff filed a motion to dismiss, arguing the claim was time barred. *Id.* The trial court granted relief and dismissed the action. *Id.* We overturned that ruling on March 1, 2005, and a trial was scheduled for October 14, 2005.[3]

On August 3, 2005, Elam filed with the circuit court a "Limited Power of Attorney." The limited power of attorney named Elam's parents as agents and au-

---

1. By our count, this is his fourth appeal arising from the same set of facts. In *State v. Elam*, this court found Elam competent to stand trial despite significant evidence that he suffered from a schizoaffective disorder, bipolar type. 89 S.W.3d 517, 522 (Mo.App.W.D. 2002). In *Elam v. State*, we reversed a denial of a motion under Rule 29.07(d) for want of jurisdiction. 210 S.W.3d 216, 219 (Mo.App. W.D.2006). In *Elam v. Dawson*, this court

ruled his replevin action was not time barred. 156 S.W.3d 807, 810 (Mo.App. W.D.2005).

2. All citations to rules refer to Missouri Supreme Court Rules (2006).

3. During this time, Elam was incarcerated and acknowledges he has no right to attend the civil proceedings nor physically possess the disputed items during his incarceration.

thorized them to receive and store Elam's property.[4] However, it withheld from his parents the right to waive certain legal rights. The limited power of attorney stated that his parents were authorized to:

make, execute and deliver acquittances, receipts, releases, or other discharges as long as it is within the proposal, negotiation, settlement, adjustment, or compromise of any and all claims, amounts owing to me, as long as it does not hinder any legal obligation that the Grantor will have to persue [sic] at a later date....

Furthermore, the writing stated, the agents may act for Elam where there:

is a protected rights interest, question of law ... as long as Grantor has been duly informed, agreed to, and forwarded permission to Agent ..., that no signature expells [sic], settles, ends, any compromised adjustment unless it has been totally made aware of, and formerly inform that of, or agreed to before hand [sic] of Agent signature of and thereon, or to any said cause of action which has appellate rights.[5]

While neither of these provisions could be classified as a model of legal clarity, both serve to limit the power of the agents.

At Sheriff's behest, on September 30, 2005, Elam's parents signed a Settlement and Release Agreement. On the same day, Elam's parents also filed a Dismissal of Cause purporting to act under the same limited power of attorney. Attached to the settlement and release agreement was a copy of the limited power of attorney. In exchange for dismissing the action, Sheriff promised to deliver a fraction of Elam's property to his parents. The release, however, did not require the Sheriff to return items which "may not be lawfully returned to [Elam] as those items are either guns, ammo, or items of evidence of a crime that should be retained by [Sheriff] and disposed of by [Sheriff] as provided by law, but under no circumstance shall be returned to [Elam]." [6]

On October 5, 2005, the circuit court dismissed the suit with prejudice. The next day, Sheriff delivered a portion of Elam's property to his parents. The day after that, Elam learned that the action had been dismissed with prejudice. Elam was not notified in advance of the compromise. On December 23, 2005, Elam filed a motion for relief from the judgment and order pursuant to Rule 74.06(b) arguing that the voluntary dismissal had been fraudulently induced and his parents lacked authority to dismiss the compromised suit. That motion was overruled. He now appeals pro se.

### Standard of Review

 "A motion to set aside a judgment is governed by the sound discretion of the trial court under Rule 74.06." *State v. Cook*, 104 S.W.3d 808, 811 (Mo.App. W.D.2003). The order will only be disturbed where the record "clearly and convincingly proves an abuse of ... discretion." *Levine v. Hans*, 923 S.W.2d 357, 358 (Mo.App. W.D.1996). However, the interpretation of a written power of attorney is a question of law. *In re Estate of Blaicher*, 23 S.W.3d 811, 813 (Mo.App. E.D.2000). We afford no deference to lower courts when reviewing questions of law.

---

4. Neither of Elam's parents are licensed to practice law in Missouri.

5. Elam also alleges he gave oral instructions to his parents "not to sign anything until [Elam] reviews document first." This statement is supported by affidavit.

6. Elam contends that other items which were seized, but not recorded on the inventory, were also not returned.

*Dial v. Lathrop R–II Sch. Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994). *See also Lamy v. Burr,* 36 Mo. 85 (1865) (giving no deference to a lower court's interpretation of a written power of attorney).[7]

### Analysis

■■■ We begin the analysis by determining whether Elam's parents had authority to settle with Sheriff and dismiss the action. "If the power of attorney does not warrant the act done under it, by the agent, the law is well settled, that the principal is not bound by the act of a special agent or attorney...." *Wahrendorff v. Whitaker,* 1 Mo. 205, 208 (1822). *See also Hyken v. Travelers Ins. Co.,* 678 S.W.2d 454, 457 (Mo.App. E.D.1984) ("Under principles of agency law, it is elementary that for an agent to bind the principal the agent must have authority to do so."). "The general rule is that the power must be pursued with legal strictness, and the agent can neither go beyond it nor beside it; in other words, the act done must be legally identical with that authorized to be done." *Lamy,* 36 Mo. at 88. Furthermore, the party relying on the agency must demonstrate its existence. *See Dudley v. Dumont,* 526 S.W.2d 839, 843–44 (Mo.App.1975) ("[T]he relationship of principal and agent cannot be presumed but must be proved by the party asserting the existence of that relationship.").

The issue before us, the improper denial of a motion filed under the authority of Rule 74.06(b), concerns itself only with the construction of the written limited power of attorney. The current case does not involve apparent authority, or authority derived from the principal's act of holding the purported agent out as having authority. *See Parks v. MBNA Am. Bank,* 204 S.W.3d 305, 313 (Mo.App. W.D.2006). Sheriff relies on actual, written authority only, or authority that the principal has conferred on the agent, empowering the agent to act on the principal's behalf. *Parshall v. Buetzer,* 195 S.W.3d 515, 519 (Mo.App. W.D.2006). The settlement agreement referenced the limited power of attorney document; it was attached to the agreement and was incorporated by reference. Furthermore, the settlement states, "it is the intent of [Elam's parents], to exercise hereby those powers granted by a Limited Power of Attorney, dated July 28, 2005." We thus analyze that document as the sole foundation for the parents' authority.

The grant of a limited power of attorney appears not to have been drafted by a lawyer; nevertheless, it is sufficiently clear to determine its operation under the current set of facts. The operative language in the "Direction of Agent" section reads:

> The Agents are hereby authorized and directed to do all acts reasonable and necessary to maintain Grantor's customary standard of living: ... to make, execute and deliver acquittances, receipts, releases or other discharges as long as it is within the proposal, negotiation, settlement, adjudgment, or compromise of any and all claims, amounts, owing to me, *as long as it does not hinder any legal obligation that the Grantor will have to persue* [sic] *at a later date* therefore; Agents can take possession, and order the removal, shipment, or delivery of any items of my property from any post, station, or other place of storage or safekeeping, governmental or private....

(Emphasis added.) The power of attorney provides the parents power to settle a

---

7. When reviewing "apparent authority" rather than express, written authority, as is the case here, deference is afforded to the lower court. *See Rosenblum v. Jacks or Better of Am. W., Inc.,* 745 S.W.2d 754, 763 (Mo.App. E.D.1988).

matter but only if it does not hinder rights which Elam may pursue later.[8]

Sheriff argued in his suggestions in opposition to Elam's Rule 74.06(b) motion that the limited power of attorney granted Elam's parents sufficient power to settle the controversy because "the Settlement Agreement hinders no 'legal obligation' of the Grantor." This position is untenable. While "obligation" may not have been the most appropriate word, its meaning is clear enough. The agents are not authorized to compromise Elam's legal rights.

"[O]bligation" refers to obligations that other parties owe Elam. Affording the word "obligation" the meaning of rights Elam owes only to other parties would not be a rational reading. How could his agents "hinder" the rights Elam owes to others? *See* RSMo § 542.301 (2000); *State v. McAllister*, 767 S.W.2d 362 (Mo. App. E.D.1989). Furthermore, how would Elam "persue [sic] at a later date" an obligation that he owed to another party? The other party would pursue that type of obligation, not Elam. The obligation for police to return seized property to Elam is contemplated by the "legal obligation" clause in the limited power of attorney. By signing the settlement and dismissing the case, the parents acted outside of the scope of the authority granted in the "Direction of Agent" section.

Furthermore, the "Powers of Agent" section, which arguably authorizes additional acts of the agents beyond those described in the "Direction of Agent" section, proscribes his parents' authority to act for Elam in the current setting. It states the parents may act with limited powers to: engage in, transact any lawful business of any nature on Grantor's behalf, where there is a protected rights interest, question of law, collection of, settlement, *as long as Grantor has been duly informed, agreed to, and forwarded permission to Agent* ..., that *no signature expells* [sic], *settles, ends, any compromised adjustment unless it has been totally made aware of, and formerly inform that of, or agreed to before hand* [sic] of Agent signature of and thereon, or to any said cause of action which has appellate rights.

(Emphasis added.) This provision requires the parents to fully inform Elam of any legal settlement and receive his authorization prior to settling any matter with a "protected rights interest" or "question of law."

Our review of the record uncovers no evidence that Elam was informed of the settlement and "forwarded permission" to his parents that the settlement met with his approval. To the contrary, Elam avers that he was not informed of the settlement and could not have been informed of the settlement due to prison regulations limiting his access to the telephone. This position is unchallenged by the record. Sheriff has produced no evidence that the power described under this section was exercised, as is his burden. *See Dudley*, 526 S.W.2d at 843–44.

■ Sheriff finally argues the court lacked jurisdiction to grant a Rule 74.06(b) motion after it dismissed the suit with prejudice.[9] *See P.R. v. R.S.*, 950 S.W.2d

---

8. Presumably, this would afford the parents the power to settle for the full amount owed to Elam.

9. Rule 74.06(b) states:

 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular;

255, 256 (Mo.App. E.D.1997). We find this contention meritless. We do not dispute that:

> once a plaintiff files a voluntary dismissal of his or her petition: "nothing remains before the court upon which it can act; even an order reinstating the case on the trial docket at the plaintiff's request is a nullity. The legal situation is as though the suit had never been brought. No steps can be taken, and any step attempted in the dismissed suit is a nullity."

*Richman v. Coughlin,* 75 S.W.3d 334, 338 (Mo.App. W.D.2002) (citation omitted; emphasis added). We do not, however, have sufficient evidence to conclude Elam, either acting for himself or through a duly authorized agent, actually filed a voluntary dismissal. The crux of the issue here was that the voluntary dismissal itself was defective because the agent lacked authority to dismiss. The trial court must retain jurisdiction to determine whether such a dismissal is authorized. *Id.* at 339–40. Therefore, the trial court was not stripped of jurisdiction by the unauthorized act. Rule 74.06(b) contemplates relief from the judgment after this sort of unauthorized dismissal.

Sheriff has not produced evidence that the parents were authorized to dismiss the suit and settle the controversy. The language of the "Direction of Agent" section seems to imply that the parents were not authorized to ever compromise the rights of Elam. Additionally, the authority described in the "Powers of Agent" section

was not employed because the record affords no evidence that Elam forwarded permission to his agents or was informed of the compromise. We therefore find the trial court's denial of Elam's Rule 74.06(b) motion clearly erroneous. Once the court learned that it had accepted a motion to dismiss from a party without proper authority to dismiss the action, it had no justification for denying the Rule 74.06(b) motion.[10]

## Conclusion

We reverse and remand for proceedings consistent with this opinion.

ULRICH and SPINDEN, JJ., concur.

---

(4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

**10.** We do not decide today if the signing of a settlement and release agreement or filing of

a dismissal for another by a non-lawyer is the unauthorized practice of law. *See generally Risbeck v. Bond,* 885 S.W.2d 749, 750 (Mo. App. S.D.1994) (attorney-in-fact, who was not an attorney-at-law, was not permitted to "file pleadings for another or otherwise practice law" on behalf of principal).